UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| CHAZ O. GULLEY, | : | |
| --- | --- | --- |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:18-cv-858 (SRU) |
| | : | |
| WARDEN WILLIAM MULLIGAN, et al., | : | |
|     Defendants. | : | |

## INITIAL REVIEW ORDER

On May 22, 2018, Chaz O. Gulley, an inmate currently confined at Northern Correctional Institution in Somers, Connecticut, brought a civil rights complaint under 42 U.S.C. § 1983 against Warden William Mulligan, District Administrator Angel Quiros, Deputy Warden Guadarrama, Correction Officer Cashman, Correction Officer Rodriguez, and Correction Officer Gonzalez, all of whom are employees of the Connecticut Department of Correction ("DOC"). Gulley claims that the defendants violated his Eighth Amendment protection against cruel and unusual punishment by using excessive force or acting with deliberate indifference to his safety while he was confined at MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut. He is also raising state law claims of assault and battery. He is suing all six defendants in their individual capacities for damages. On June 8, 2018, Magistrate Judge William I. Garfinkel granted Gulley's motion to proceed *in forma pauperis*. *See* Order #8. For the following reasons, I will permit his complaint to proceed, in part.

I. Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. Factual Allegations

Gulley alleges the following facts. On October 20, 2017, approximately one week before the start of Gulley's civil trial in the United States District Court at Hartford, Connecticut, United States District Judge Michael P. Shea sent a writ of *habeas corpus ad testificandum* to Warden Mulligan at MWCI to bring Gulley to the district court in Hartford on October 25, 2017 and November 8, 9, 13, 14, 15, 16, and 17, 2017.[1] Compl. [Doc.#1] ¶ 6. Judge Shea also sent a notice to DOC officials stating that inmates were expected to appear on time for their scheduled court proceedings and that the officials needed to take steps to ensure that the inmates appeared on time. *See id.* at ¶¶ 10, 17.

---

[1] Although he does not cite the case in his complaint, Gulley presumably is referring to his civil case in *Gulley v. Correctional Officer Rowold*, No. 3:14-cv-1832 (MPS), a case alleging excessive force, assault, and battery against Correction Officer Rowald at Cheshire Correctional Institution. That case went to trial and ended in a jury finding in favor of Rowald on all counts. *See id.*, Doc.# 106. The writ of *habeas corpus ad testificandum* issued by Judge Shea is

2

On the morning of November 8, 2017, Gulley asked multiple correction officers at MWCI why they were not preparing him for his scheduled transport to court. Compl. ¶ 7. The officers repeatedly told him that they "had nothing to do with" his situation and that it was Officer Cashman's fault because he oversees court transports for MWCI inmates. *Id.* at ¶ 8. At 8:20 a.m., twenty-five minutes before his scheduled time to appear in court, Officers Rodriguez and Gonzalez removed Gulley from his cell and brought him to the Admitting and Processing ("A&P") area for transport. *Id.* at ¶¶ 9-10. Gulley was frustrated because, by the time he arrived at the courthouse, he would not have time to speak with his attorneys before his court proceedings began. *Id.* at ¶ 10.

When he arrived at the A&P area, Gulley asked Cashman why DOC officials were deliberately making him late for his court appearances, and the two began arguing about the situation. Compl. ¶¶ 10-11. During the argument, Cashman grabbed Gulley's arm and Gulley pulled his arm out of Cashman's grasp. *Id.* at ¶ 12. At that moment, Cashman, Rodriguez, and Gonzalez starting pushing, pulling, punching and choking Gulley. *Id.* at ¶ 13. Other correction officers responded and ultimately restrained Gulley in handcuffs and shackles. *Id.* at ¶¶ 14-15. Gulley was then transported to the district court in Hartford. *Id.* at ¶ 16. Gulley suffered facial bruising, constant pain, fear, anxiety, and emotional distress from the incident. *Id.* at ¶ 21. He was not issued a disciplinary report for the incident. *Id.* at ¶ 17.

At some point, Warden Mulligan and Deputy Warden Guadarrama became aware of the incident. *See* Compl. ¶ 17. They told Gulley that "they messed up" and that "it won't happen again." *Id.* at ¶ 18. Gulley believes that they made those statements because they received a

---

docketed as entry 92 in that case.

notice from Judge Shea about the failure of DOC officials to ensure that inmates appear on time for scheduled court proceedings. *Id.* at ¶ 19.

Gulley filed a grievance regarding the incident with Cashman, Rodriguez, and Gonzalez. Compl. p. 7. When the grievance was denied, he appealed to District Administrator Quiros, but Quiros denied his appeal. *Id.* at pp. 5, 8. Gulley also wrote a separate letter to Quiros regarding the incident, and Quiros wrote an "inaccurate[]" response months later. *Id.* at p. 5.

III. Analysis

Gulley claims that Mulligan, Quiros, Guadarrama, Cashman, Rodriguez, and Gonzalez violated his Eighth Amendment protection against cruel and unusual punishment either by using excessive force or acting with deliberate indifference to his safety. Compl. ¶ 1. He also brings state law claims of assault and battery. *Id.* at ¶ 2. I will permit his section 1983 action[2] to proceed against all six defendants at this time.

    A.    Excessive Force

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson v. McMillian*, 503 US. 1, 4 (1992)). To establish a claim of excessive force under the Eighth Amendment, the prisoner must satisfy a subjective and objective component. *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000). The subjective component requires a showing that the official's use of physical force was "malicious[] and

---

[2] Gulley states that he is also bringing his claims under 42 U.S.C. § 1988. Compl. ¶ 2. However, section 1988 does not provide a cause of action; instead, it "authorize[es] the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation." *Oquendo v. Department of Correction*, No. 3:16-cv-1709 (MPS), 2018 WL 1069577, *5 (D. Conn. Feb. 27, 2018) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). Thus, Gulley's

sadistic[] rather than as part of a good faith effort to maintain or restore discipline." *Wilkins*, 559 U.S. at 40 (quoting *Hudson*, 503 U.S. at 9). The objective component . . . focuses on the harm done in light of contemporary standards of decency, but the amount of harm that must be shown depends on the nature of the claim. *Sims*, 230 F.3d at 21; *Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 688 (S.D.N.Y. 2016). Although some degree of injury ordinarily will be required; *Banks*, 168 F. Supp. 3d at 688; the prisoner does not have to show that he sustained a significant injury in order to prevail on an excessive force claim. *Sims*, 230 F.3d at 22; *Wilkins*, 559 U.S. at 37. A prisoner sufficiently states an Eighth Amendment claim if he "alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically . . . ." *Sims*, 230 F.3d at 22.

Gulley has stated a plausible Eighth Amendment claim for excessive force against Cashman, Rodriguez, and Gonzalez, all of whom participated in the assault in the A&P area on November 8, 2017. Thus, I will permit the excessive force claim to proceed against those three defendants in their individual capacities for damages.

B. <u>Deliberate Indifference to Safety</u>

To state a claim for deliberate indifference to safety, in violation of the Eighth Amendment, Gulley must show that the alleged conduct was sufficiently serious and that the defendants acted with a sufficiently culpable state of mind, that is, that they acted maliciously and sadistically to cause harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The cause of action requires that defendants must have been aware that Gulley faced an excessive risk to his health and safety and ignored that risk. *See id.* at 837. To determine whether a prisoner faced an

---

claim under that provision fails.

excessive risk of serious harm, the courts "look at the facts and circumstances of which the [defendants] w[ere] aware at the time [they] acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

Moreover, to obtain an award for damages against the defendants, Gulley must show that the defendants were personally liable for the alleged constitutional violation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983"). A prisoner who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

Gulley claims that Mulligan, Guadarrama, and Quiros, the three supervisory DOC officials, acted with deliberate indifference to his safety by dismissing his complaints and/or failing to take any corrective action following the incident in the A&P area on November 8, 2017. *See* Compl. ¶¶ 17-20. Although it is unclear from the complaint how Mulligan and Guadarrama became aware of the incident, Gulley alleges that they told him that "they messed up" and that such conduct "won't happen again." *Id.* at ¶ 18. Gulley alleges that Quiros rejected

6

the appeal from his grievance and wrote an "inaccurate[]" response to his letter detailing the incident. *Id.* at ¶ 20. Even construing those allegations liberally, Gulley's complaint is insufficient to state an Eighth Amendment claim for deliberate indifference to safety against Mulligan, Guadarrama, and Quiros in their individual capacities. Accordingly, those claims are dismissed.

      C.      <u>State Law Claims</u>

In addition to his Eighth Amendment claims, Gulley is raising state law claims for assault and battery against the defendants. I may exercise supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), which provides in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

"The concept of supplemental jurisdiction has its origins in the judicial doctrine of pendent jurisdiction, discussed by the United States Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–29 (1966)." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (lateral citations omitted). Under *Gibbs*, 383 U.S. at 725, a district court has supplemental jurisdiction over an entire action, including state law claims, whenever the federal law claims and state law claims in the case "derive from a common nucleus of operative fact." Because the assault and battery claims arise from the same incident as the excessive force claim, I will exercise supplemental jurisdiction over the assault and battery claims and permit them to proceed against Cashman, Rodriguez, and Gonzalez in their individual capacities for damages.

## ORDERS

(1) Gulley's Eighth Amendment claim for excessive force and state law claims for assault and battery may proceed against Cashman, Rodriguez, and Gonzalez in their individual capacities for damages. His Eighth Amendment claim for deliberate indifference to safety against Mulligan, Guadarrama, and Quiros **is dismissed.**

(2) The Clerk shall verify the current work addresses for Cashman, Rodriguez, and Gonzalez with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at the confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any of the defendants fail to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within **seven months (210**

**days)** from the date of this order.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of September 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge