UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHAZ O. GULLEY,
    Plaintiff,

v.                                             Case No. 3:18-cv-858 (SRU)

WARDEN MULLIGAN, et al.,
    Defendants.

**RULING ON MOTION TO DISMISS**

On May 22, 2018, Chaz O. Gulley, a prisoner confined at the Northern Correctional Institution in Somers, Connecticut, brought a civil rights complaint *pro se* under 42 U.S.C. § 1983 against six Department of Correction ("DOC") officials for violating his Eighth Amendment protection against cruel and unusual punishment. Compl., Doc. No. 1. After initial review, I permitted Gulley's Eighth Amendment excessive force claim and state law claims for assault and battery to proceed against three of the defendants: Correction Officers Cashman, Rodriguez, and Gonzalez. Initial Review Order, Doc. No. 10 at 8.

On December 13, 2018, those defendants moved to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dism., Doc. No. 14. The defendants argue that Gulley's claims are barred by a previous settlement agreement between Gulley and the State of Connecticut. *Id.*; Mem. of Law in Supp. of Mot. to Dism. ("Defs.' Mem."), Doc. No. 14-1; Settlement Agreement, Defs.' Attach. B, Doc. No. 14-3. Gulley filed an opposition to the defendants' motion on December 24, 2018, arguing that the settlement agreement is unrelated to, and therefore does not bar, the instant case. Pl's Opp'n to Defs.' Mot. to Dism. ("Gulley Opp'n"), Doc. No. 18. For the following reasons, the Motion to Dismiss (Doc. No. 14) is **denied**.

    I.      Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the complaint must show, not merely allege, that the plaintiff is entitled to relief. *See id.*

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Ashcroft*, 556 U.S. at 678); *see also Amaker v. New York State Dept. of Corr. Services* 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). This is true whether the plaintiff has counsel or appears *pro se*. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). However, "[w]here . . . the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

In deciding a motion to dismiss, I may consider "statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." *ATSI Communications, Inc. v. Shaar Fund, Ltd.*,

493 F.3d 87, 98 (2d Cir. 2007). I may also "take judicial notice of public records such as pleadings, orders, judgments, and other documents from prior litigation, including state court cases." *Lynn v. McCormick*, 2017 WL 6507112, at *3 (S.D.N.Y. Dec. 18, 2017) (citing *Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012)); *see also Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). Such records may include settlement agreements in prior cases. *See Moore v. City of New York*, 2017 WL 35450, at *23 n.13 (S.D.N.Y. Jan. 3, 2017) (district courts not constrained from considering settlement agreements at motion to dismiss stage).

II. Factual Allegations

As stated in my Initial Review Order, Gulley alleged the following facts against the defendants:

> On October 20, 2017, approximately one week before the start of Gulley's civil trial in the United States District Court at Hartford, Connecticut, District Judge Michael P. Shea sent a writ of *habeas corpus ad testificandum* to Warden Mulligan at [the MacDougall-Walker Correctional Institution ("MWCI")] to bring Gulley to the district court in Hartford on October 25, 2017 and November 8, 9, 13, 14, 15, 16, and 17, 2017.[1] [Compl. ¶ 6]. Judge Shea also sent a notice to DOC officials stating that inmates were expected to appear on time for their scheduled court proceedings and that the officials needed to take steps to ensure that the inmates appeared on time. *See id.* at ¶¶ 10, 17.
> 
> On the morning of November 8, 2017, Gulley asked multiple correction officers at MWCI why they were not preparing him for his scheduled transport to court. Compl. ¶ 7. The officers repeatedly told him that they "had nothing to do with" his situation and that it was Officer Cashman's fault because he oversees court transports for MWCI inmates. *Id.* at ¶ 8. At 8:20 a.m., twenty-five minutes before his scheduled time to appear in court, Officers Rodriguez and Gonzalez removed Gulley from his cell and brought him to the Admitting and Processing ("A&P") area for transport. *Id.* at ¶¶ 9-10. Gulley was frustrated because, by the time he arrived at the courthouse, he would not have time to speak with his attorneys before his court proceedings began. *Id.* at ¶ 10.

---

[1] The civil trial was for the matter of *Gulley v. Iweka*, No. 3:14-cv-1832 (MPS), a case alleging excessive force, assault, and battery against DOC officials at Cheshire Correctional Institution. After trial, the jury found in favor of the sole remaining defendant, Correction Officer Rowald. Judgment, Defs.' Attach. A, Doc. No. 14-2. The writ of *habeas corpus ad testificandum* issued by Judge Shea is docketed at number 92 in that case.

3

> When he arrived at the A&P area, Gulley asked Cashman why DOC officials were deliberately making him late for his court appearances, and the two began arguing about the situation. Compl. ¶¶ 10-11. During the argument, Cashman grabbed Gulley's arm and Gulley pulled his arm out of Cashman's grasp. *Id.* at ¶ 12. At that moment, Cashman, Rodriguez, and Gonzalez starting pushing, pulling, punching and choking Gulley. *Id.* at ¶ 13. Other correction officers responded and ultimately restrained Gulley in handcuffs and shackles. *Id.* at ¶¶ 14-15. Gulley was then transported to the district court in Hartford. *Id.* at ¶ 16. Gulley suffered facial bruising, constant pain, fear, anxiety, and emotional distress from the incident. *Id.* at ¶ 21. He was not issued a disciplinary report for the incident. *Id.* at ¶ 17.
>
> At some point, Warden Mulligan and Deputy Warden Guadarrama became aware of the incident. *See* Compl. ¶ 17. They told Gulley that "they messed up" and that "it won't happen again." *Id.* at ¶ 18. Gulley believes that they made these statements because they received the notice from Judge Shea about the failure of DOC officials to ensure that inmates appear on time for scheduled court proceedings. *Id.* at ¶ 19.
>
> Gulley filed a grievance regarding the incident with Cashman, Rodriguez, and Gonzalez. Compl. p. 7. When the grievance was denied, he appealed to District Administrator Quiros, but Quiros denied his appeal. *Id.* at pp. 5, 8. Gulley also wrote a separate letter to Quiros regarding the incident, and Quiros wrote an "inaccurate[]" response months later. *Id.* at p. 5.

Initial Review Order, Doc. No. 10 at 2-4.

### III. Analysis

The defendants contend that the instant case is barred pursuant to an agreement Gulley entered with the State of Connecticut to settle two prior civil actions in this court. Settlement Agreement, Defs.' Attach. B.; *Gulley v. Lieutenant Semple*, No. 3:16-CV-1575 (MPS); *Gulley v. Semple*, No. 3:16-CV-425 (MPS). The agreement, which is dated November 27, 2017, and signed by Gulley on December 1, 2017, provided for the dismissal of both cases with prejudice in exchange for a payment of $500. Settlement Agreement, Defs.' Attach. B, at 2. Gulley also agreed to

> [R]elease and discharge all named defendants, the State of Connecticut and each of its current or former officers, agents, servants, employees, successors, legal representatives and assigns, from any and all actions, causes of action, suits, claims,

4

> controversies, damages and demands of every nature and kind, including attorneys fees and costs, monetary and equitable relief, ***whether known or unknown, which he had or now has or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of [the] Agreement, arising out of, or in any way related to the incidents or circumstances which formed the basis for the above referenced civil action[s], including such actions as may have been or may in the future have been brought in the federal courts***, courts of the State of Connecticut or any other state or forum, any state or federal administrative agency, or before the Claims Commissioner pursuant to Conn. Gen. Stat. §4-141, et seq. ***Th[e] release shall include but is not limited to all causes of action alleging violations of [Gulley's] state and/or federal constitutional rights, his rights arising under the statutes and laws of the United States, the State of Connecticut or any other state***, any other source of rights that may exist, and such causes of action as may be available under the common law, to the date of th[e] Agreement.

*Id.* at 3-4 (emphasis added). The defendants argue that the Agreement released any claim Gulley may have had against them that arose on or before December 1, 2017, including the instant case, which arose from an incident on November 8, 2017. Defs.' Mem. at 4. Gulley argues that the instant case is unrelated to the two prior cases covered by the Agreement. Gulley Opp'n at 1-2.

"[S]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." *Tromp v. City of New York*, 465 F. App'x 50, 51 (2d Cir. 2012) (quoting *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)); *Ramos v. Department of Corrections*, 2018 WL 1368905, at *3 (D. Conn. Mar. 16, 2018). Similarly, a release of liability "is a species of contract" and is also governed by contract law. *Springle v. City of New York*, 2013 WL 592656, at *3 (S.D.N.Y. Feb. 14, 2013) (quoting *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001)). In deciding the enforceability of a settlement agreement, district courts look to state contract law. *Id.* Under Connecticut law, a contract is binding if the parties have mutually assented to its terms and where the terms of the contract are "clear and unambiguous." *Brandt v. MIT Development Corp.*, 552 F. Supp. 2d 304,

5

319 (D. Conn. 2008) (quoting *Audobon Parking Assoc. Ltd. P'ship v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 811 (1993)).

Here, the language of the Settlement Agreement reached in *Gulley v. Lieutenant Semple*, No. 3:16-CV-1575 (MPS), and *Gulley v. Semple*, No. 3:16-CV-425 (MPS), does not clearly bar Gulley's claims in this case. Although the Agreement provides that Gulley must release the defendants from all causes of action "whether known or unknown, which he had or now has or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to [December 1, 2017]," it also provides that the cause action must "aris[e] out of, or [be] related to, the incidents or circumstances which formed the basis for" those two prior civil actions. Settlement Agreement, Defs.' Attach. B, at 3. Both *Gulley v. Lieutenant Semple*, No. 3:16-CV-1575 (MPS), and *Gulley v. Semple*, No. 3:16-CV-425 (MPS), concerned events that took place at different dates against different DOC officials and appear entirely unrelated to the events that formed the basis of the instant case.[2] Although I agree with the defendants that the record shows mutual assent to the Agreement, the language of the Agreement does not clearly bar the causes of action in the instant case.

## ORDER

The defendants' Motion to Dismiss (Doc. No. 14) is **DENIED**. The case shall proceed against Cashman, Rodriguez, and Gonzalez in their individual capacities for damages.

Gulley's Motion for Status Update (Doc. No. 19) is **GRANTED** and this ruling shall serve as the requested status update.

---

[2] In *Gulley v. Commissioner Semple*, No. 3:16-CV-425 (MPS), Gulley claimed that DOC officials at the Corrigan-Radgowski Correctional Institution used excessive force and acted with deliberate indifference to his safety when removing him from his cell on September 2, 2015 and subjected him to unnecessary restraints in November 2015. In *Gulley v. Lieutenant Semple*, No. 3:16-CV-1575 (MPS), Gulley claimed that DOC officials at MWCI subjected him to excessive force by confining him in in-cell restraints in August 2016.

So ordered.

Dated at Bridgeport, Connecticut, this 9th day of May 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge